```
 1                    UNITED STATES DISTRICT COURT
 2                      DISTRICT OF PUERTO RICO

 3    UNITED STATES OF AMERICA,
 4
 5         Plaintiff,
                                        Criminal No. 04-160 (JAF)
 6         v.

 7    RENE VAZQUEZ-BOTET,
 8    MARCOS MORELL-CORRADA,

 9         Defendants.
```

10

11                          **OPINION AND ORDER**

12          This public corruption prosecution arose out of a

13    conspiratorial agreement in mid-1995 and subsequent payoffs made

14    by four Puerto-Rico based contractors to the Defendants and Vice

15    Speaker of the Puerto Rico House of Representatives between 1997

16    and 1999. Defendants - René Vázquez-Botet ("Vázquez") and Marcos

17    Morell-Corrada ("Morell") - solicited approximately $2.4 Million

18    in extortion money for their agreement to help secure and retain

19    a contract to construct a $300-Million public works project called

20    the North Coast Superaqueduct. Defendants were high-ranking and

21    influential officials in the New Progressive Party (NPP) at the

22    time of the illegal agreement, and they or their agents were

23    secretly paid nearly $1 Million by the contractors before the

Criminal No. 04-160 (JAF)                                              -2-

1   conspiracy was uncovered. Defendants were both sentenced earlier
2   today to sixty months for their crimes.
3       Defendants were indicted on April 4, 2004, for violating 18
4   U.S.C. §§ 2, 371, 1341, 1343, 1951. Docket Document No. 3. A
5   magistrate judge originally granted them bail according to 18
6   U.S.C. § 3142(c) in the amount of $100,000, and imposed release
7   conditions, on the same day. Docket Document Nos. 9, 11. On
8   November 3, 2006, a jury found Defendants guilty of most, but not
9   all, of the charges leveled against them. Docket Document No.
10  405. Later the same day, this court hesitantly allowed Defendants
11  to remain on bail under strict conditions of 24-hour home
12  incarceration with electronic monitoring and a substantial
13  increase on their bail amount. Docket Document No. 409.
14      Before the court is Vázquez' motion, filed on January 16,
15  2007, pursuant to 18 U.S.C. § 3143(b)(1)(2000 & Supp. 2006),
16  requesting that we allow him to remain free on bail pending the
17  First Circuit's resolution of his appeal. Docket Document No.
18  439. The Government opposed Vázquez's motion on January 26, 2007.
19  Docket Document No. 449. Defendants were sentenced this morning,
20  January 30, 2006.[1]

---

[1]Morell asked to join Vázquez' motion in open court at this morning's sentencing, and so we will treat the motion as jointly made.

Criminal No. 04-160 (JAF)                                                -3-

The standard for bail pending appeal is set forth by the Bail Reform Act of 1984. 18 U.S.C. § 3143(b)(1). Pursuant to this standard, "there is no presumption in favor of release pending appeal." <u>United States v. Colon-Munoz</u>, 292 F.3d 18, 20 (1st Cir. 2002). Rather, it is presumed that an individual convicted of an offense and sentenced to a term of imprisonment ("defendant") will be detained pending appeal. <u>Id.</u> A defendant may overcome this presumption in favor of detention, and secure release pending appeal, however, if he is able to convince the court of two things. He must show

> "(A) by clear and convincing evidence that [he] is not likely to flee or pose a danger to the safety of any other person or the community if released . . . <u>and</u> (B) that the appeal is not for the purposes of delay and raises substantial question of law or fact likely to result in - (i) reversal, (ii) an order for a new trial, (iii) a sentence that does not include a term of imprisonment, or (iv) a reduced sentenced to a term of imprisonment, or total of the time already served plus the expected duration of the appeal process."

18 U.S.C. § 3143(b)(1)(emphasis added).

We begin by noting that Congress' creation of the detention presumption set forth in the Bail Reform Act of 1984 was motivated by the widely-held belief that detaining a defendant immediately

after his conviction or, as here, sentencing, reinforces the deterrent effect of the criminal law by ensuring that the public sees and understands the consequences of criminal activity. See Report of the Committee on the Judiciary, United States Senate, 98th Congress, 1st Session, Report No. 98-225, p. 27, U.S. Code Cong. & Admin. News 1984. By contrast, allowing a freshly-sentenced defendant to stride out of the courtroom and rejoin his peers, albeit for a limited time, dilutes this message for a public that may not understand why a convicted criminal whose sentence has already been determined remains free. Id.

We find the aforementioned policy considerations acutely relevant in Puerto Rico, and in the present case, where these convictions are just the latest examples of local politically powerful officials and their associates exploiting their positions and influence to abuse the public trust for personal financial gain. In a community dogged by such chronic corruption, Defendants' crimes have the dubious honor of being particularly crass. By extorting a percentage of the Superaqueduct's cost from contractors in order to greedily satisfy their own personal and political designs, Defendants showed a shocking disrespect for the sacrifice of public resources that this public works' project represented. It matters little to our analysis that Defendants

were not themselves public officials; as part of the governor's "inner circle,"[2] with well-known access to many Government agency heads and other powerful figures in Government, Defendants not only extorted money that this community had gathered in order to improve its common lot, but they dealt a demoralizing blow to the public's confidence in Government integrity in the process.

Our community and this District Court will not sanction the granting of the requested privilege simply because there is no merit in a request that only seeks to deal another blow to the deterring effect needing here to curtail the wave of Governmental and public corruption.

Federal district courts and judges in the courts of appeals know ver well that the Congressional policy behind the Bail Reform Act and the subject of post-conviction and sentencing detention must be wisely administered, in order to protect the criminal justice system from the wrong perception that judges have two measuring sticks, one for regular criminals and a more lenient one for the white-collar defendant.  When the post-conviction motion practice is studied by the Court of Appeals and the sentencing transcript is reviewed by the duty panel, (see Transcript,

---

[2] Vázquez was one-time campaign manager for former-Governor Pedro Roselló, and Morell has served as Secretary General of the NPP.

1   Attachment 1 to this Order), it will be evident and crystal clear
2   that the sentenced Defendants cannot expect and will not obtain
3   the privilege of bail pending appeal under the circumstances of
4   this case.
5   	The first argument Defendants make in their request for bail
6   pending appeal is that they pose neither a flight risk nor a
7   danger to the community. Docket Document No. 439. They point out
8   that they have been out on bail for more than two years, during
9   which time they have fully complied with all release conditions
10  ordered by this court. Id.
11  	Defendants' argument that they will comply with their release
12  terms in the future because they have complied with them in the
13  past fails to convince us that they are not a flight risk because
14  it overlooks two important, and related, points of concern.
15  First, we were already worried about Defendants' flight risk when
16  they were first convicted, and only permitted them to have bail
17  pending sentencing because the Government did not object to the
18  motion and because stricter release conditions - such as 24-hour
19  home incarceration with electronic monitoring and a larger bond
20  - were imposed to mitigate the risk. Docket Document Nos. 408,
21  409. Today, however, the Government has changed its position and
22  is objecting to bail pending appeal. Docket Document No. 449.

Criminal No. 04-160 (JAF)                                           -7-

Furthermore, and this brings us to our second point, the flight risk which so worried us pre-sentencing is now heightened post-sentencing.  Prior to sentencing, Defendants could not be sure of the sentence they would receive; now, after sentencing, they know that they face sixty months in prison. "The risk of flight at this stage of the proceedings is, therefore, a great deal more pronounced than at the pre-sentencing stage." United States v. Bertoli, 854 F. Supp. 975, 1159 (D.N.J. 1994); see also United States v. Bailey, 759 F. Supp. 685, 687 (D. Colo. 1991)("Reliance on presentence compliance with bond conditions, alone, does not meet the statutory burden."); United States v. Lavandier, 14 F.Supp.2d 169, 174 (D.P.R. 1998)(doubting that trial-stage compliance with bail terms means that post-conviction bail-term compliance is likely).  Finding Defendants' argument against flight risk rather weak in light of the significant amount of prison time they have been sentenced to serve, we find that there is no clear and convincing evidence that these financially-solvent Defendants would voluntarily present themselves, as the law requires them to do, should they lose on appeal.

Even if we did not find Defendants' petition doomed by our view that they pose an unacceptable flight risk as convicted and sentenced criminal defendants, we would still deny the instant

motion for bail because they have failed to convince us that they have met the second bail requirement, which is that their appeal raises a substantial question of law or fact likely to result in reversal. 18 U.S.C. § 3143(b)(1)(B). Defendants argue that three of their pending appellate claims satisfy the second bail requirement. We will first examine First Circuit law regarding the second bail requirement (request not for the purpose of delay and raises substantial questions, etc.), and then we will briefly review, within the constraints of time,[3] each one of Defendants' arguments in turn.

As a starting point, it is helpful to view the second bail requirement as two separate requirements: (1) that the appeal raise a substantial question of law or fact ("the substantial question prong"); and (2) that if the substantial question is determined favorably to defendant on appeal, that decision is likely to result in reversal or an order for a new trial on all counts on which imprisonment is imposed. United States v. Bayko, 774 F.2d 516, 523 (1st Cir. 1985). As to the substantial question prong, the Bayko court defined it thus: "a 'close' question or one

---

[3] Counsel for Defendants announced at the sentencing hearing that they have arranged with the Clerk's Office, U.S. Court of Appeals, to make a facsimile filing of papers seeking review of this matter by today.

that could be decided the other way." Id.; United States v. Miller, 753 F.2d 19, 23 (3rd Cir. 1985)(stressing that the substantial question prong does not ask whether the district court believes its decision is likely to be reversed). As to the likely reversal prong, the First Circuit held in Bayko, its seminal case on the second bail requirement, that it is "a requirement that the claimed error not be harmless or unprejudicial." Id. (noting that some might view this interpretation to belie the plain language of the statute).

The first question on appeal claims that there was insufficient evidence presented at trial to support Defendants' extortion, or conspiracy to extort, convictions ("the evidentiary insufficiency appeal"), and Defendants argue that it satisfies the substantial question prong. Docket Document No. 439. The Government counters that it does not, Docket Document No. 449, and we agree. The First Circuit will affirm a conviction as long as the total evidence, both direct and circumstantial, "with all reasonable inferences made in the light most favorable to the Government, is such that a rational trier of fact could have found guilt beyond a reasonable doubt." United States v. Gobbi, 471 F.3d 302, 308-09 (1st Cir. 2006)(internal citations and quotations omitted). As the Government outlines in its filings, and as the

Criminal No. 04-160 (JAF)                                          -10-

trial record shows, trial testimony abounds substantiating Defendants' extortion, and conspiracy to extort, convictions. Docket Document No. 449. Furthermore, we have already twice denied Defendants' challenges to evidentiary sufficiency in this case, and yet Defendants have cited no precedent in support of the proposition that these rulings present a close question that could be decided the other way. Docket Document Nos. 356 (order denying Defendants' motion for judgment of acquittal as a matter of law), 418 (order denying Defendants' motion for acquittal).

The second issue on appeal involves our denial of a recusal motion ("the recusal appeal"), and Defendants argue that their appeal of this issue satisfies the substantial question prong of the second bail requirement. Docket Document No. 439.[4] A brief recap of this issue is necessary to understand what they mean. On May 25, 2006, Defendants filed a motion requesting the undersigned's recusal under 28 U.S.C. §§ 455(a),(b)(4), (b)(5)(ii), and(b)(5)(iv), arguing that the judge's spouse, who is a practicing attorney, had had some involvement with matters tangential to this case that called the judge's impartiality into

---

[4] A second, unsupported and frivolous motion to recuse the undersigned was filed by Defendant Vázquez on January 29, 2007, Docket Document No. 456. The same was summarily denied by margin order. See Docket Document No. 457.

question. Docket Document No. 255, 257. We denied the motion on July 21, 2006, Docket Document No. 266, and, in response, Defendants sought mandamus relief from the First Circuit. On September 20, 2006, the First Circuit denied the petition, holding that Defendants' arguments failed to establish the "clear and indisputable" right to recusal necessary to trigger mandamus. In re Vázquez Botet, 464 F.3d 54, 57 (1st Cir. 2006). Pointing out that the standards for issuance of the writ of mandamus were much higher than they were on ordinary appeal, however, the First Circuit deferred definitive resolution of the recusal issues for post-judgment appeal, in the event that Defendants chose to file such an appeal. Id.

Defendants insist that the recusal appeal satisfies the substantial question prong because the First Circuit hinted at the "closeness" of the recusal question by deferring definitive resolution to a post-judgment appeal. Docket Document No. 439. We disagree. Firstly, we observe that the First Circuit characterized Defendants' eventual entitlement to the judge's recusal as "problematic," not close. In re Vázquez Botet, 464 F.3d at 57. Secondly, we find particularly compelling the Government's illustration that many of the hypothetical premises upon which Defendants' recusal motion relied never came to

Criminal No. 04-160 (JAF)                                              -12-

fruition during their trial. Id. (among these unrealized hypotheticals: (1) the Government did not seek restitution for the spouse's client, (2) the judge's spouse never participated, or was asked by any party to participate, in the trial, (3) the judge's spouse was never called to the stand, nor her records subpoenaed, during the trial).

The third, and final, issue on appeal alleges that certain testimony from an FBI case agent and Government witness improperly served to vouch for the credibility for other witnesses that were key to the Government's case ("the vouching testimony appeal"), and Defendants once again argue that this satisfies the substantial question prong. Docket Document No. 439. According to Defendants, the Government, knowing that some of its key witnesses had credibility problems, invited FBI Special Agent Ivan Vitousek ("Special Agent Vitousek"), to the stand, where it proceeded to elicit testimony from him that served to improperly bolster the key witnesses' credibility. Id. Defendants cite numerous instances where they allege that this occurred, of which we shall offer two examples.

In one contested exchange, the Government asked Vitousek to testify about the Government's general practice of using cooperating witnesses in corruption and fraud investigations after

Criminal No. 04-160 (JAF)                                          -13-

1    Defendants' counsel had conducted lengthy cross-examinations of
2    Government witnesses during which he aggressively suggested that
3    their plea agreements with the Government were unusually generous
4    and, therefore, their testimony unreliable.  See Defendants'
5    submission, Docket Document No. 439, and the Government's well-
6    argued response, which we adopt because of time constraints,
7    Docket Document No. 449.  In response to the Government's
8    inquiries about the witness program that Defendants had repeatedly
9    called into question, Vitousek testified that the benefit of
10   insider witnesses is that they "can explain exactly what happened"
11   and are part of "a small group of persons who really know about
12   [the crime]."  Id.  Defendants objected, arguing that the jurors
13   would understand Vitousek's statements as a direct endorsement of
14   the credibility of the Government witnesses who had just appeared
15   before them to testify.  Id.
16        In another contested exchange, Defendants' own counsel
17   questioned Vitousek about the benefits conferred upon one of the
18   Government's key cooperating witnesses, José Cobián Guzmán
19   ("Cobián"), and then objected to one of the responses that defense
20   counsel elicited.
21        We need not detail all of the similarly questioned
22   testimonial exchanges from Vitousek's time on the stand here.

They are already explained in great detail in Defendants' motion for bail pending appeal, Docket Document No. 439, and effectively shot down by the Government in its response, Docket Document No. 449.

Importantly, the Government carefully evaluates and responds to Defendants' challenges of Vitousek's testimony by convincingly demonstrating that Defendants opened the door to the statements at issue, and are, therefore, foreclosed from complaining that they were the fruit of a deliberate Government effort to elicit impermissible boosts for their key witnesses' credibility. Docket Document No. 449. Indeed, this was the very same impression that this court had when faced with Defendants' vouching objections at trial, and is the very same impression this court still has today as it reviews the parties' submissions, and so we conclude that Defendants' vouching testimony appeal cannot serve as a substantial question for the purposes of bail eligibility pending appeal. We also find that the Vitousek incidents were carefully and purposefully orchestrated by Defendants' counsel with the purpose of creating the scenario which they now complain about. This court, or the Court of Appeals, will not endorse such tactics, allowing Defendants to reap a benefit under these circumstances.

Criminal No. 04-160 (JAF)                                                   -15-

Now that we have indicated that none of Defendants' three appellate arguments present a substantial question of law or fact, we would like to finally observe that this only further reinforces our earlier decision that Defendants pose a significant flight risk. After all, "[f]light might be more tempting to a defendant without an appellate leg to stand on than one who has a good chance for reversal." Castiello, 878 F.2d at 555 (stating that the strength of a defendant's appeals is a common-sense factor for district courts to consider when weighing flight risk).

In accordance with the foregoing, we find that Defendants have not presented clear and convincing evidence showing that they are not a flight risk, and even if they had, that they have not shown that any of their appeals represent a substantial question of law or fact. Therefore, the motion for bail pending appeal is **DENIED**.

**IT IS SO ORDERED.**

San Juan, Puerto Rico, this 30th day of January, 2007.

                                        S/José Antonio Fusté
                                         JOSE ANTONIO FUSTE
                                         U. S. District Judge